UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYWONNE TERRIEL SAUNDERS, | ) | 3:24-CV-00054 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE, *et al.*, | ) | |
| *Defendants*. | ) | May 30, 2024 |

## INITIAL REVIEW ORDER

*Pro se* plaintiff Tywonne Terriel Saunders, a sentenced[1] inmate currently incarcerated at Cheshire Correctional Institution, filed this action pursuant to 42 U.S.C. § 1983.  He names six defendants:  Lieutenant John Doe, Officer John Doe 1, Officer John Doe 2, Captain Hurdle, Warden Washington, and Captain Jackson.  He brings claims under the Eighth Amendment, alleging that the Defendants Doe used excessive force against him when he was confined at Garner Correctional Institution and the remaining defendants failed to discipline the Doe officers.  Plaintiff sues Defendants in their individual and official capacities and seeks damages as well as declaratory and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C.

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on January 20, 2023, to a term of imprisonment of four years and six months.  *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=383946 (last visited May 30, 2024).  The Court may take judicial notice of matters of public record.  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

§§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

I.    **FACTUAL BACKGROUND**

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Plaintiff was incarcerated at Garner Correctional Institution during the events underlying this action. On August 13, 2023, Plaintiff was involved in an altercation. A code was called and multiple officers responded to the housing unit. Officer Doe 1 instructed Plaintiff to put his hands against the wall and, later, to put his hands behind his back. Plaintiff complied with both orders.

Despite Plaintiff's compliance, Lieutenant Doe sprayed Plaintiff in the face with a chemical agent. When Plaintiff tried to shield his face with his hands, Officer Doe 2 tackled him to the floor. Although Plaintiff stated that his right arm was injured and he was in pain, Officers Doe 1 and Doe 2 yanked his arms behind his back and told him to stop crying.

Plaintiff was taken to the restrictive housing unit where he was strip searched. Plaintiff found the strip search process to be humiliating.

Plaintiff attempted to wash the chemical agent from his eyes at the cell sink. His arm was

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

swollen and extremely painful.  Plaintiff was ordered to come to the cell door to have a picture taken of his hands.  Plaintiff told Officer Doe that he could not see and was unable to get to the door, whereupon Officer Doe told Plaintiff he would receive another disciplinary ticket.

The following day, Plaintiff spoke with Captain Hurdle about the assault.  Captain Hurdle stated, "that tackle was awesome," and joked with Lieutenant Doe and Captain Jackson about the tackle.  From August 13, 2023, until August 18, 2023, Plaintiff made multiple requests for treatment for his arm to unidentified individuals, but was ignored.  On August 22, 2023, Plaintiff spoke to Warden Washington.  Warden Washington also laughed and commented: "It was a great tackle.  I told him he should go to the NFL."

On October 13, 2023, Dr. Doe put Plaintiff on the list for an x-ray and prescribed Tylenol.  Plaintiff submitted inmate requests and grievances regarding the incident, which were not responded to.  In addition, his request for video preservation was denied.

## II.    DISCUSSION

Plaintiff asserts four claims:  (1) Lieutenant Doe and Officers Doe 1 and Doe 2 used excessive force against him, in violation of the Eighth Amendment; (2) Lieutenant Doe and Officers Doe 1 and Doe 2 committed the state law torts of assault and battery; (3) Captain Hurdle, Captain Jackson, and Warden Washington failed to discipline the Doe Defendants, constituting deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment; and (4) all Defendants humiliated Plaintiff, in violation of the Eighth Amendment.

### A.    Official Capacity Claims

Plaintiff's complaint indicates that he asserts his claims against Defendants in their official capacities.  To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh

Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, the Court considers only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

Plaintiff also seeks declaratory and injunctive relief. Plaintiff may proceed with injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Plaintiff's claims in this action are against DOC employees who work at Garner Correctional Institution, where he was previously incarcerated. As Plaintiff alleges that he is now confined at Cheshire Correctional Institution, his requests for official capacity relief against the Defendants in this action are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). Plaintiff's request for declaratory and injunctive relief are therefore dismissed.

      B. <u>Personal Involvement</u>

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("a plaintiff

must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Plaintiff alleges that Lieutenant Doe and Officers Doe 1 and Doe 2 were directly involved in the use of force. Warden Washington, Captain Jackson, and Captain Hurdle, however, are supervisory officials who were not alleged to be present during the use of force and only learned about the use of force afterward. The Second Circuit has held that "there is no special rule for supervisory liability." *Id.* at 618. Prior to *Tangreti*, a supervisory official could be found liable for failing to remedy a wrong after becoming aware it had occurred. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (listing five factors, of which this is the second, to establish supervisory liability). After *Tangreti*, however, this manner of establishing supervisory liability is no longer available. *See Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (noting district courts' rejection of *Colon* factors, including the second factor, after *Tangreti*). Mere awareness of an issue is no longer sufficient to state a claim for supervisory liability. *Tangreti*, 983 F.3d at 616-17 ("A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution.") (quoting *Iqbal*, 556 U.S. at 677).

The supervisory liability claims against Warden Washington, Captain Jackson, and Captain Hurdle are therefore dismissed, insofar as Plaintiff bases his allegations on a theory of supervisory liability against them.

C. Eighth Amendment

Plaintiff asserts three Eighth Amendment claims: (1) Defendants Lieutenant Doe, Officer Doe 1, and Officer Doe 2 used excessive force against him; (2) Defendants Washington, Jackson, and Hurdle failed to discipline the Doe Defendants; and (3) all Defendants humiliated him.

*1. Excessive Force*

To state a claim for use of excessive force in violation of the Eighth Amendment, Plaintiff must allege facts establishing subjective and objective components. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000). The objective component focuses on the harm done to the inmate, in light of contemporary standards of decency. The amount of harm required depends on the nature of the claim. *Id.* at 21. Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as a part of a 'good faith effort to maintain or restore discipline.'" *Id*. at 40 (quoting *Hudson*, 503 U.S. at 9).

The extent of an inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Hudson*, 503 U.S. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any effort made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that he was sprayed in the face with a chemical agent when he was complying with all orders, and was slammed to the ground when he tried to shield his face from the chemical agent. Plaintiff suffered the effects of the chemical agent and severe pain and

6

swelling in his right arm. The allegations of the complaint suggest that the amount of force used was excessive. For example, Plaintiff alleges that Lieutenant Doe sprayed him in the face with the chemical agent when he had surrendered and was complying with all orders, and that the "tackle" was harsh enough to warrant comments from other officers. Using a chemical agent against a compliant inmate can constitute excessive force. *See Hinton v. Pearson*, No. 3:21-cv-863 (MPS), 2021 WL 4521994, at \*6 (D. Conn. Oct. 4, 2021) (citation omitted). Similarly, based on the allegations, the harshness of the tackle employed when Plaintiff was just attempting to shield his face appears to be a malicious act, rather than one intended to restore discipline. The claim for use of excessive force will therefore proceed against Defendants Lieutenant Doe, Officer Doe 1, and Officer Doe 2 for further development of the record.

2. *Failure to Discipline*

Plaintiff contends that Warden Washington, Captain Jackson, and Captain Hurdle failed to discipline the Doe Defendants. However, "an inmate . . . has no constitutional right to have a correctional officer disciplined." *Hunnicutt v. Kitt*, No. 3:10-cv-857 (CSH), 2012 WL 1247268, at \*10 (D. Conn. Apr. 13, 2012) (dismissing claim for failure to reprimand correctional officers) (citing *S. v. D.*, 410 U.S. 614, 619 (1973) (holding that private citizen has no "judicially cognizable interest in the prosecution or nonprosecution of another")). Any claim for failure to reprimand staff is dismissed. As Plaintiff has stated no cognizable claims against Defendants Washington, Jackson, and Hurdle, they are dismissed from this suit.

3. *Harassment*

Plaintiff also alleges that the actions of all Defendants humiliated him, in alleged violation of the Eighth Amendment. As this claim appears to be based on the comments made concerning the "tackle," the claim fails. There is no constitutional right to be free from verbal harassment.

*See Banks v. County of Westchester*, 168 F. Supp. 3d 682, 691 (S.D.N.Y. 2016) (verbal harassment by correctional officer failed to state Eighth Amendment claim) (citing cases).  Any Eighth Amendment claim based on harassment or humiliation is dismissed.

        D.        Fourth Amendment

Finally, Plaintiff generally alleges that all Defendants acted to humiliate him.  Plaintiff makes two references to humiliation in the factual allegations of his complaint.  The first is in connection with the strip search when Plaintiff was placed in restrictive housing:  Plaintiff describes a standard strip search, in which his clothing was removed and he was required to stand, squat, and cough.  ECF No. 1 ¶¶ 21–24.  Second, Plaintiff alleges he felt "humiliated" when his requests to "multiple correctional officers, lieutenants, and nurses" for help with his injured arm were met with "laughter, jokes, and ridicule."  *Id.* ¶¶ 34–36.

While "[s]earches that involve intentional humiliation, abuse, or invasive touching may violate the Fourth Amendment," *Golden v. Department of Corr., NYC*, No. 23-CV-9889 (LTS), 2023 WL 54401, at *4 (S.D.N.Y. Jan. 2, 2024) (citation omitted), Plaintiff does not allege that he was touched by any officer, or that the search involved atypical actions by the officers conducting the search that would constitute humiliation or abuse.  Even where contact with an inmate's genitalia does occur during a strip search, such search "does not violate an inmate's constitutional rights as long as the officer had no intention of humiliating the inmate or deriving sexual arousal or gratification from the contact." *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015).  Plaintiff therefore cannot maintain a Fourth Amendment claim on the basis of humiliation resulting from the strip search.  Likewise, Plaintiff cannot maintain a Fourth Amendment claim based solely on his humiliation from conversations with non-specified individuals; first, it is not clear Defendants were personally involved in these conversations, and second because there are no allegations

suggesting these conversations involved intentional humiliation or abuse, sufficient to suggest a potential Fourth Amendment violation.

## ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his individual capacity claims based on the use of excessive force against Lieutenant Doe, Officer Doe 1, and Officer Doe 2.

The Court DISMISSES, pursuant to 28 U.S.C. § 1915A(b)(1), the claims against Defendants Washington, Jackson, and Hurdle; any Fourth Amendment claim; and the Eighth Amendment claim based on humiliation or harassment. The Court also dismisses all official capacity claims.

Plaintiff asserts supplemental state law claims against Defendants Lieutenant Doe, Officer Doe 1, and Officer Doe 2 for assault and battery. These claims will proceed along with the Eighth Amendment claim for use of excessive force.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1)  If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Defendants Lieutenant Doe, Officer Doe 1, and Officer Doe 2, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **June 28, 2024,** informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. He also must provide the names of the Doe Defendants by **August 28, 2024.** The Court will then begin the effort to serve process on Defendants named above in their individual capacities as described above.

(2)  Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an

9

amended complaint by **June 28, 2024. An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **June 28, 2024,** the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future. However, service cannot be effected until Plaintiff provides the name of the Doe Defendants.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 30th day of May, 2024.

                                                 /s Sarala V. Nagala
                                                 SARALA V. NAGALA
                                                 UNITED STATES DISTRICT JUDGE