UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

TYWONNE TERRIEL SAUNDERS,

    Plaintiff,

v.

JAMIE JARRIN, CHRIS RAGUNAUTH,

    Defendants.

24-CV-54 (SFR)

---

**MEMORANDUM & ORDER**

Plaintiff Tywonne Terriel Saunders, who is serving a sentence in the custody of the Connecticut Department of Correction ("DOC"),[1] filed a Complaint under 42 U.S.C. § 1983 alleging six prison officials violated his rights under the United States Constitution and Connecticut state law. *See* Compl., ECF No. 1, at 2. The Court[2] permitted Saunders to pursue his Eighth Amendment excessive force and state law claims for assault and battery against three defendants in their individual capacities. ECF No. 12, at 9. All other claims were dismissed. *Id.* Defendants now move for summary judgment, asserting that Saunders failed to exhaust his administrative remedies before filing his Complaint. *See* ECF No. 31. I have

---

[1] Saunders was incarcerated at Cheshire Correctional Institution when he filed his Complaint. *See* ECF No. 1-1 (envelope bearing Cheshire return address). The DOC website now shows Saunders located at Corrigan-Radgowski Correctional Center. *See* DOC, *Inmate Information*, www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=383946 (last visited Sept. 22, 2025). The court may take judicial notice of matters of public record. *See*, *e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

[2] The Honorable Sarala Nagala originally presided over this case and entered the initial review order. *See* IRO, ECF No. 12. Saunders's case was transferred to me on January 6, 2025. Order, January 6, 2025, ECF No. 38.

1

reviewed the Defendants' Early Motion for Summary Judgment and supporting memorandum (together, "Motion"), *see* ECF Nos. 31, 31-1, the facts contained in Defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1 St."), ECF No. 31-2, Defendants' exhibits, ECF No. 31-3 to 31-5, Saunders' opposition to the Motion and his exhibits, ECF No. 35, 37, Defendants' reply, ECF No. 39, and the record in this matter.

After careful review, I DENY the Motion.

## I.      BACKGROUND

The relevant facts are drawn from Defendants' Local Rule 56(a)1 statement and supporting exhibits, *see* Defs.' L.R. 56(a)1 St., ECF No. 31-2, and the statement and exhibits submitted by Saunders in opposition to summary judgment.[3]

---

[3] Local Rule 56(a)1 requires a party moving for summary judgment to file "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)1. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 statement containing separately numbered paragraphs corresponding to the Local Rule 56(a)1 statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. D. Conn. L. Civ. R. 56(a)2(i). Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. "'Since it is not obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits, []he must file [his] own affidavits contradicting [his] opponent's if []he wants to preserve factual issues for trial,' either the district court or the moving party is to supply the *pro se* litigant with notice of the requirements of Rule 56." *Irby v. New York City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280-81 (2d Cir. 1999)). Defendants informed Saunders of this requirement. *See* Notice, ECF No. 31-6. Despite receiving this notice, Saunders did not submit a Local Rule 56(a)2 statement. However, Saunders did submit a statement opposing summary judgment under penalty of perjury that attaches various exhibits. I therefore consider the facts asserted in those filings. ECF Nos. 35, 35-1, 37. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to 'raise the strongest arguments that they suggest.'").

Saunders was transferred from Cheshire Correctional Institution ("Cheshire") to Garner Correctional Institution ("Garner") on June 26, 2023. Defs.' L.R. 56(a)1 St. ¶ 2.[4] On August 13, 2023, Saunders "was involved in an incident at [Garner] involving another inmate and staff use of force." *Id.* ¶ 3. In the Complaint, Saunders alleges that he was sprayed "directly in his eyes" with "pepper spray" and "violently tackled" by officers he could not identify, despite complying with officer commands. Compl., ECF No. 1, at 2.

In Saunders' Objection to Defendants' Motion for Summary Judgment, which he submits under penalty of perjury, Saunders asserts that following this incident, he "talked to Lt. Grant, Captain Hurdle, Captain Jackson, and Warden Williams and Deputy Warden" about the behavior of the officers involved. Pl.'s Obj., ECF No. 35, at 1. Saunders says that after first speaking to these officials, he subsequently wrote to them and "never rec[ei]ved an answer." *Id.* He references exhibits attached to his Objection, which include several CN 9601 Inmate Request Forms. One form, dated August 14, 2023, is addressed to Captain Hurdle and states: "Can you please review camera footage from 8-13-23 in Hotel around 1:30pm - 2:00 pm by cells 203-210. If you review this footage you'll view the assault." ECF No. 37, at 2. A second form, dated the same day and addressed to Warden Washington,[5] states: "I spoke you about the incident on 8-13-23 and now I'm writing to you about the same incident. Your officers maliciously and violently assaulted me. I would like to know who these officers are and see

---

[4] Citations to Defendants' Local Rule 56(a)1 Statement are by paragraph number. With respect to other documents, page citations are to the page number generated by the ECF system.

[5] Saunders states in his Objection that he talked to Warden Williams but the Inmate Request Form is addressed to Warden Washington. Saunders' Complaint named Warden Washington, ECF No. 1, who was subsequently dismissed by the Court's initial review order, ECF No. 12. Therefore, it would appear the Warden's correct name is Washington.

that they are disciplined." *Id.* at 3. Another form, dated August 19, 2023 and addressed to "F.O.I," asks for the preservation of camera footage and the "names of the Lt. who sprayed me and C/O who tackled m[e]." *Id.* at 4. The August 14, 2023 forms addressed to Captain Hurdle and Warden Washington do not indicate any response. The form addressed to F.O.I. provides a response, informing Saunders that "FOI and video preservations should always be kept on sep[a]rate requests" and telling him he could put in a new request for the video preservation in accordance with Administrative Directive provisions. *Id.*

Saunders says that after not receiving any response from prison officials to his informal requests, he filed a Level 1 Grievance. Pl.'s Obj., ECF No. 35, at 1. Defendants agree that on August 31, 2023, Saunders filed a Level 1 Grievance related to the August 13, 2023 use of force incident. Defs.' L.R. 56(a)1 St. ¶¶ 34-35. In the grievance, Saunders stated:

> I was sprayed with chemical agents and tac[kl]ed to the ground with great force. I had my hands up and did not mak[e] any threatening remarks or movements. This all took place on 8-13-23 around 1:30pm – 2:00pm in Hotel unit between cells 203-210 top tier. I don[']t know who sprayed me or who tackled me but I would like them to be punished in some way. I will be filing suit.

ECF No. 31-4, at 58. This grievance is marked as received on September 5, 2023, and as "Rejected" on September 15, 2023, with the "Reason" listed as: "Per A.D. 9.6, Section 6, subsection A(i), the inmate must attempt to seek informal resolution prior to filing a grievance, you failed to seek informal resolution with the appropriate staff member as outlined in A.D. 9.6. Therefore, your grievance has been rejected." *Id*. A box is checked on the form stating: "This decision is not subject to further appeal." *Id.* The response section of the form indicates that a staff member named Washington provided the response. *Id.* It is unclear if this was

4

Warden Washington, with whom Saunders states he previously attempted to resolve the matter informally, or some other staff member at Garner named Washington.[6]

Defendants assert that Saunders' Level 1 Grievance "did not include an attached CN 9601, Inmate Request Form, containing the appropriate staff member's response" or "an explanation indicating why the CN 9601, Inmate Request Form was not attached." Defs.' L.R. 56(a)1 St. ¶¶ 37-38. Saunders has not disputed this assertion. *See* Pl.'s Obj. 1-2; Defs.' Reply, ECF No. 39, at 4.

Saunders was transferred from Garner to Cheshire on November 1, 2023. Defs.' L.R. 56(a)1 St. ¶ 4. Defendants assert, and Saunders has not disputed, that other than the Level 1 Grievance that Saunders filed on August 31, 2023, "[Saunders] did not file any Level 1 Grievances, have any Level 1 Grievances rejected, file any Level 2 Grievances or have any Level 2 Grievances rejected during the time[ ] he was at [Garner] between August 13, 2023, and November 1, 2023." *Id.* ¶ 41.[7]

---

[6] Saunders supplies his own copy of this grievance form, which includes a note on the side: "PS I wrote every higher up with nothing answer." ECF No. 37, at 5. This note does not appear on the version submitted by Defendants and thus it would appear that Saunders added this note to the form after Washington provided his response. *See* ECF No. 31-4, at 58.

[7] Saunders' Objection attaches a CN 9601 Inmate Request form dated October 1, 2023 addressed to F.O.I. On this form, Saunders writes: "Can you please give me all documents pertaining to my 'fight' report number GCI-23-09-075 please provide all documents and pictures for legal reasons." ECF No. 37, at 6. Saunders submitted this from after receiving a response from FOI to his August 19, 2023 request, which told him his request was improper and he could submit a new request. *See* ECF No. 37, at 4. Saunders' Complaint, which is unverified, had stated: "On October 1, 2023, the plaintiff re-wrote all requests and submitted them, including another level one grievance." Compl., ECF No. 1, at 5. However, as noted, Saunders has not disputed Defendants' assertion that he did not submit another Level 1 Grievance while at Garner during this time period. On this record, it appears the only request submitted on October 1, 2023 was the Inmate Request form relating to the FOI request.

5

While at Cheshire, Saunders filed the Complaint in this case on January 16, 2024. *Id.* ¶¶ 5-6; Compl., ECF No. 1. Saunders remained at Cheshire until February 6, 2024. Defs.' L.R. 56(a)1 St. ¶ 5. Saunders filed a Level 1 Grievance on March 15, 2024, but it pertained to lost mail and not the excessive use of force incident at Garner. *Id.* ¶¶ 42-43.

## II.     LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. The "same standard applies whether summary judgment is granted on the merits or on an affirmative defense." *Giordano v. Market Am., Inc*., 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation and internal quotation marks omitted). This "specific evidence" must be admissible.

*See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

The court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). Although the court is required to read a self-represented party's papers liberally and interpret them to raise the strongest arguments that they suggest, *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III.   DISCUSSION

### A.   General Principles of Exhaustion

Defendants seek summary judgment on the ground that Saunders failed to exhaust his administrative remedies before filing his § 1983 complaint. *See* Motion, ECF No. 31, at 1. The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit with respect to prison conditions to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"). The PLRA requires "proper exhaustion"; the incarcerated individual must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the agency holds out, and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

An individual's failure to exhaust administrative remedies is excusable only if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (citations and internal quotation marks omitted). The *Ross* court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to

8

aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive." *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016)

Exhaustion of administrative remedies is an affirmative defense. *Perttu v. Richards*, 605 U.S. 460, 469 (2025). The defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendant provides reliable evidence that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff must present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (stating that "once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability"); *Quint v. Martin*, No. 3:21-CV-1695 (KAD), 2025 WL 1616625, at *5 (D. Conn. June 6, 2025).

    **B.**    **Application of General Principles of Exhaustion**

        **1.**    **DOC Grievance Procedures**

DOC "requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('AD 9.6')," which provides procedural rules and deadlines for processing

9

general inmate requests. *Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016); *see also Gaston v. Doe*, No. 3:19-CV-3(AWT), 2021 WL 66434, at *3 (D. Conn. Jan. 7, 2021) ("The general inmate grievance procedure is set forth in Administrative Directive 9.6 and can be found at portal.ct.gov/DOC.").[8]

Administrative Directive 9.6(6) requires an aggrieved individual to first seek informal resolution prior to filing a grievance. A.D. 9.6(6)(a)(i)(1). If "the verbal communication does not resolve the issue," or the individual chooses not to attempt to resolve the issue verbally, the individual must submit a written request to an appropriate staff member on CN 9601, Inmate Request Form. A.D. 9.6(6)(a)(i)(2)(a), 9.6(6)(a)(i)(3). "A response to the inmate shall be made within 15 business days from receipt of the written request." A.D. 9.6(6)(a)(i)(8).

"An inmate shall file a Grievance if the inmate is not satisfied with the informal resolution offered." A.D. 9.6(6)(a)(ii)(1). A Level 1 Grievance using a CN 9602 form must be filed within thirty calendar days from the date of "the occurrence or discovery of the cause of the Grievance," A.D. 9.6(6)(a)(ii)(4), and "[t]he inmate shall attach a CN 9601, Inmate Request Form, containing the appropriate staff member's response." A.D. 9.6(6)(a)(ii)(2). Furthermore:

> If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached to the CN 9602, Inmate Grievance Form- Level 1. The inmate shall include the name of the staff member whom the informal resolution was addressed and the date of the attempt."

---

[8] The version of Administrative Directive 9.6 that governs here is the version with an effective date of April 30, 2021. Defendants have attached this Directive to their Motion. *See* ECF 31-5, at 9.

A.D. 9.6(6)(a)(ii)(2)(a).

The Level 1 Grievance is reviewed by staff for compliance with sections 5 and 6 of the Administrative Directives. A.D. 9.6(6)(b)(i)(2). If the Grievance is in compliance, the "Grievance shall be processed." A.D. 9.6(6)(b)(i)(2)(a). However,

> i. If the review finds the Grievance not to be in compliance, then the Grievance shall be rejected and the inmate shall be notified.
>
>> 1. If the failure to meet the procedural requirement(s) can be corrected the inmate shall have (5) calendar days to correct, [sic] the defect(s) and resubmit a request for administrative remedy.
>>
>> 2. If the resubmitted request for administrative remedy does not correct the defect(s), the request for administrative remedy shall be rejected and not subject to further appeal.

A.D. 9.6(6)(b)(i)(2)(a)(i)(1)-(2). Staff must provide a written response within thirty days after the Level 1 Grievance is filed. A.D. 9.6(6)(b)(i)(3).

An individual may appeal the disposition of a Level 1 Grievance by utilizing a CN 9604, Inmate Grievance Appeal Form – Level 2, within five calendar days after receiving the Level 1 decision. A.D. 9.6(6)(b)(ii)(1). Prison officials must respond to the Level 2 appeal within thirty business days. A.D. 9.6(6)(b)(ii)(4). Level 3 review is restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been no timely response. A.D. 9.6(6)(b)(iii)(1)(a)-(c). A Level 3 appeal must be filed within five calendar days from the individual's receipt of the decision on the Level 2 appeal. A.D. 9.6(6)(b)(iii)(2). Level 3 review is the final level of review of all grievances that meet the requirements of the Administrative Directives. A.D. 9.6(6)(b)(iii)(5).

### 2. Exhaustion of Administrative Remedies

Defendants argue that summary judgment should enter because Saunders failed to exhaust his administrative remedies by failing to "file a procedurally compliant Level 1 Grievance after attempting informal resolution of his issues, within thirty days of the incident giving rise to the grievance." Motion, ECF No. 31-1, at 4. Saunders opposes summary judgment, stating that (1) he "followed every step of the PLRA," (2) he attempted informal resolution with prison staff but they did not respond to his attempts, and (3) summary judgment would be inappropriate because "failure to exhaust[ ] remedies does not give defendants the right to assault [him]." Pl.'s Obj., ECF No. 35, at 1. Defendants reply that Saunders' opposition to Defendants' Motion should be deemed waived because it does not take the form of a Local Rule 56(a)2 statement. *See* Defs.' Reply, ECF No. 39, at 1-3.

As a preliminary matter, I will not consider Saunders' opposition to Defendants' Motion waived because his Objection includes a factual statement under penalty of perjury and various exhibits. It "is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Saunders makes clear he opposes summary judgment and he provides evidence with his submission. To the extent this evidence is relevant to my analysis, I will consider it.[9]

Saunders' statement that he "followed every step of the PLRA," Obj., ECF No. 35, at 1, is conclusory and insufficient to avoid summary judgment. *See*, *e.g.*, *Otero v. Purdy*, 3:19-cv-01688 (VLB), 2021 WL 4263363, at *10 & n.9 (D. Conn. Sept. 20, 2021) (prisoner's

---

[9] *See supra* note 3.

conclusory allegation that he exhausted administrative remedies not sufficient to survive summary judgment); *Chambers v. Johnpierre*, No. 3:14CV1802(VAB), 2016 WL 5745083, at *7 (D. Conn. Sept. 30, 2016) (same).

The undisputed evidence shows that Saunders was involved in an incident with another incarcerated individual and prison staff on August 13, 2023. Defs.' L.R. 56(a)1 St. ¶ 3. Saunders filed a Level 1 Grievance regarding the use of force by correctional officers during this incident on September 5, 2023. *Id.* ¶ 34.

Under A.D. 9.6, Saunders was required to first seek informal resolution prior to filing a Level 1 Grievance. A.D. 9.6(6)(a)(i)(1). A prisoner may seek informal resolution under A.D. 9.6 either verbally or by submitting a CN 9601 form to the appropriate staff member. *See* A.D. 9.6(6)(a)(i)(2)(a). If verbal communication does not resolve the issue, a prisoner must submit a CN 9601 form. *Id.* Saunders states under penalty of perjury in his Objection that he "talked to LT Grant, Captain Hurdle, Captain Jackson and Warden Williams[10] and Deputy Warden," and then "wrote all of them and never received an answer." Pl.'s Obj., ECF No. 35, at 1. Saunders also submitted evidence with his Objection that he submitted CN 9601 forms to Captain Hurdle and Warden Washington on August 14, 2023, after the incident but before he filed his grievance. *See* ECF No. 37, at 2-3. In one of the CN 9601 forms, attached to the Objection, Saunders stated to Warden Washington that he had "spoke[n] to you about the incident on 8-13-23 and now I[']m writing to you about the same incident." ECF No. 37, at 3. Thus, Saunders has at least raised an issue of material fact regarding whether he sought informal resolution.

---

[10] *See supra* note 5.

After the attempt to resolve the matter informally did not resolve the issue, Saunders was required to file a Level 1 Grievance. AD 9.6(6)(a)(ii)(1). In submitting his Level 1 Grievance, the Administrative Directives required Saunders to either (1) attach to the Level 1 Grievance a CN 9601 form containing the staff member's response or (2) include an explanation for why a CN 9601 form was not attached. *See* A.D. 9.6(6)(a)(ii)(2)(a) ("If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, *or did not receive a timely response to the inmate request*, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached to the CN 9602, Inmate Grievance Form- Level 1.") (emphasis added).

Saunders submitted a Level 1 Grievance on a CN 9602 form on August 31, 2023. ECF No. 31-4, at 58. That grievance was not accompanied by a CN 9601 form showing he attempted informal resolution, nor did the grievance contain an explanation for why this form was not attached. ECF No. 31-4, at 58; Defs.' L.R. 56(a)1 St. ¶ 37.

Saunders' Objection suggests that he did not attach the CN 9601 forms to his Level 1 Grievance because he "never received an answer" from the prison officials to whom he sent the CN 9601 forms. *See* Pl.'s Obj, ECF No. 35, at 1. But that was not fatal to his ability to exhaust. Saunders's failure to meet the procedural requirements could have been corrected by resubmitting a Level 1 Grievance explaining that he had sought informal resolution but the officials to whom his CN 9601 forms were directed did not respond. *See* A.D. 9.6(6)(a)(ii)(2)(a), 9.6(b)(i)(2)(a)(i)(1). There is no evidence before me that Saunders attempted to correct the procedural issue in his Level 1 Grievance by resubmitting his Grievance with an explanation of his attempts at informal resolution. Defs.' L.R. 56(a)1 St. ¶ 41.

I thus conclude that Saunders failed to exhaust his administrative remedies before filing suit. Accordingly, summary judgment must enter unless Saunders establishes that the administrative remedy procedure was not available to him.

### 3. Unavailability of Remedies

I construe Saunders' response as maintaining that the administrative remedy procedure was unavailable to him. Construed liberally, Saunders' filings suggest that the administrative remedy procedure is "so opaque and confusing that they were 'practically speaking, incapable of use.'" *Williams*, 829 F.3d at 126 (quoting *Ross*, 578 U.S. at 643).

As noted, the record before me, taken in the light most favorable to the nonmoving party, suggests that Saunders did, in fact, verbally discuss his grievance and subsequently submit CN 9601 forms to Captain Hurdle and Warden Washington regarding the incident on August 13. Defendants argue that Saunders' failure to include this information was a procedural error under the Administrative Directives, which require that the CN 9601 form be attached to any Level 1 Grievance (or, alternatively, an explanation for why the form is not attached). Def.'s Reply, ECF No. 39, at 4; AD 9.6(6)(a)(ii)(2)(a). As explained above, if an individual fails to follow this procedural requirement, the Administrative Directives allow that individual to file a corrected grievance within five days. AD 9.6(6)(b)(i)(2)(a)(i)(1). Saunders could have complied with the Administrative Directives by resubmitting a Level 1 Grievance and including in it an explanation that he was not attaching a CN 9601 form because he had not received a response to the form.

In denying Saunders' Level 1 Grievance, however, Washington made no mention of the availability of a corrective procedure. Instead, Washington wrote that the reason for rejection was Saunders' "fail[ure] to seek informal resolution with the appropriate staff

member." ECF No. 31-4, at 58. Resolving all factual disputes and drawing all inferences in Saunders' favor, as I must do at this stage of the litigation, Washington's statement was not factually correct as Saunders *had* sought informal resolution by submitting two CN 9601 forms—one to Warden Washington and one to Captain Hurdle.[11] Under the Administrative Directives, Washington could have properly rejected the grievance on the ground that Saunders failed to attach a CN 9601 form or explain why the form was not attached. Such a response would have communicated the actual procedural defect with Saunders' grievance, which was easily correctable. Instead, the response conveyed that Saunders had not done something that Saunders had in fact done.

Moreover, Washington checked a box on the Level 1 Grievance form indicating: "This decision is not subject to further appeal." ECF No. 31-4, at 58. The form includes only two options for staff to check, either (1) "This decision is not subject to further appeal" or (2) "This matter may be appealed within 5 calendar days." But in reality, neither box applied to Saunders' situation. Under the Administrative Directives, Saunders should have had the ability to resubmit the Grievance and correct his failure to explain why he had not attached the CN 9601 form.

As noted, the Directives provide:

> i. If the review finds the Grievance not to be in compliance, then the Grievance shall be rejected and the inmate shall be notified.

---

[11] If it was Warden Washington who responded to Saunders' Level 1 Grievance, he would have known that Saunders had indeed sought informal resolution. In fact, he would have still had his CN 9601 form. As noted, however, it is unclear from the current record whether the staff member named Washington who responded to Saunders' Level 1 Grievance was Warden Washington.

16

> 1. If the failure to meet the procedural requirement(s) can be corrected the inmate shall have (5) calendar days to correct, [sic] the defect(s) and resubmit a request for administrative remedy.
>
> 2. If the resubmitted request for administrative remedy does not correct the defect(s), the request for administrative remedy shall be rejected and not subject to further appeal.

A.D. 9.6(6)(b)(i)(2)(a)(i)(1)-(2). Saunders' situation fell under subsection (i)(1). However, as with the statement of reasons for the Grievance being rejected, the selection of the "no appeal" box did not communicate to Saunders that his failure to meet the procedural requirement could be corrected and he could resubmit his grievance within five days. Instead, checking the box that said "[t]his decision is not subject to further appeal" implied that the error was *not* correctable and the decision to reject the grievance not subject to appeal (i.e., falling under subsection (i)(2)). The binary character of the boxes at the bottom of the form provided Saunders with no information about the remedy actually still available to him, instead implying he could do nothing further—a misperception that the written "Reason" for rejection did nothing to correct.

Prison officials have, in similar circumstances, used the written "Reason" to advise prisoners on how to properly correct this particular issue under the Administrative Directives. *See, e.g.*, *Harvin v. Cheney*, No. 3:23CV328 (MPS), 2025 WL 1616682, at *10, *13 (D. Conn. June 20, 2025) (noting that when prison official rejected grievance for procedural defect, official "advised that under Directive 9.6(6)(b), [plaintiff] had five calendar days to correct the defect and 'resubmit a request for administrative remedy'"); *Youmans v. Barone et al.*, No. 3:22-cv-01650-SFR, slip op. at 5 n.5 (D. Conn. Sept. 26, 2025) ("The "Reason" [for denial] also included specific instructions on how to correct the defects in the grievance: 'Per A.D. 9.6 . . . the inmate shall have (5) calendar days to correct the defect(s) and resubmit a request for

17

administrative remedy. '"). Here, Washington did no such thing. An ordinary prisoner, upon receiving such a rejection, may well have not understood he could do something further. In essence, resolving all facts and drawing all inferences in the nonmovant's favor, what was communicated to Saunders was: "Your grievance was rejected because you did not seek informal resolution and you can't appeal this decision." Saunders, who had in fact sought informal resolution, could reasonably conclude that he had no further ability to challenge the determination that he had not sought informal resolution—and he was thus at a "dead end."

The Supreme Court in *Ross* "posed a series of hypothetical questions" to "assist lower courts in making assessments" of whether administrative grievance processes were in fact available to an ordinary prisoner. *Wine v. Black*, No. 3:18-CV-704 (VAB), 2024 WL 2113734, *19 (D. Conn. May 11, 2024). One such question, applicable here, is whether the relevant procedures were "knowable by an ordinary prisoner in [the inmate's] situation, or was the system so confusing that no such inmate could make use of it?" *Id.* (quoting *Ross*, 578 U.S. at 648). Contradictory instructions as to a grievance procedure can make an otherwise clear directive "prohibitively opaque." *See Sease v. Frenis*, No. 3:17-CV-770 (SRU), 2021 WL 260398, at *9 (D. Conn. Jan. 25, 2021) ("If the absence of guidance in a grievance procedure can lead to an administrative scheme's being 'prohibitively opaque,' then surely contradictory instructions in a grievance procedure can also lead to an administrative scheme's being prohibitively opaque.") (quoting *Williams*, 829 F.3d at 124-27).

Courts in this district have observed that form language leaving a plaintiff with the impression that there is nothing further for him to do can contribute to the unavailability of administrative remedies. *See, e.g.*, *Wine*, 2024 WL 2113734, at *20-21 (describing form language that plaintiff had "exhausted DOC's administrative remedies" as "confusing" as it

left plaintiff "with the impression that there was nothing further for him to do") (citation omitted); *Braham v. Perelmuter*, No. 3:15-CV-1094 (JCH), 2017 WL 3222532, at *10 (D. Conn. July 28, 2017) ("[T]he Health Services Review Coordinator checked off the box indicating that [plaintiff] had exhausted his remedies, which likely suggested to [plaintiff] that he need not take any further steps to appeal or resubmit his grievance.") (citation omitted).

Here, the grievance form language at issue is similarly confusing: by stating that the grievance "decision is not subject to further appeal," and by failing to indicate that the procedural defect could be corrected, the form suggested nothing further could be done. The confusing message about how or even if Saunders could proceed with his grievance was compounded by Washington's failure in his response to accurately describe the procedural defect.[12] *See Morgan v. Watson*, No. 3:20CV254 (JBA), 2021 WL 2722704, at *3 (D. Conn. July 1, 2021) (concluding that grievance process resulted in a "procedural dead end" as "the prison effectively cut [plaintiff] off from rest of the administrative process: he could not appeal because the grievance was returned without disposition, but he also could not resubmit his grievance as he did not know the procedural defect claimed to warrant the return of his grievance by the prison"). Thus, a combination of circumstances—the checked "no appeal" box, the lack of information in the response about the possibility of resubmission, and Washington's misdescription of the procedural error—combined to effectively contradict the

---

[12] As noted, the response stated that Saunders failed to seek informal resolution when in reality he had sought informal resolution. The actual procedural defect in Saunders' grievance was Saunders' failure to either attach the 9601 form or explain why it was not attached—not his failure to seek informal resolution.

Administrative Directives provisions regarding resubmission, creating confusion. *See Sease*, 2021 WL 260398, at *9.

Here, prison officials could have used AD 9.6(b)(i)(2)(a)(i)(1) to address Saunders' situation—informing him of the nature of the procedural defect in his grievance and his opportunity to cure it. Had Washington mentioned in his response that Saunders could correct the procedural defect by resubmission, or had the grievance form itself contained instructions on correcting procedural defects through resubmission, there likely would have been no confusion. Here, instead, the information Saunders received from Washington in response to his grievance did not correctly identify the procedural defect and suggested there was no further action Saunders could take. The response was thus confusing.

I therefore conclude based on the particular factual circumstances of this case, viewed in the light most favorable to Saunders, that the confusing and contradictory response provided to Saunders regarding his Level 1 Grievance creates a genuine issue of material fact as to whether his administrative remedies were so opaque as to be unavailable to him.

## IV.   CONCLUSION

Because there are genuine disputes of material fact regarding the availability of administrative remedies, I DENY the Defendants' motion for summary judgment, ECF No. 31.

**SO ORDERED.**

New Haven, Connecticut
September 30, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge